UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION
CASE NO. 2:22-cv-14425

Zachary Sawicki, individually, and
behalf of all others similar situated,

      Plaintiff,

v.

LOAN DEPOT LLC, and
JOHN DOES 1-10,

      Defendants.

_____/

**DEFENDANT LOANDEPOT.COM, LLC'S
MOTION TO STRIKE**

Defendant loanDepot.com, LLC, incorrectly sued as Loan Depot LLC ("loanDepot"), respectfully moves this Court for an order striking Plaintiff Zachary Sawicki's ("Plaintiff") class allegations from the Complaint, pursuant to Federal Rules of Civil Procedure 12(f), and 23 and Plaintiff's demand for attorney's fees in Count IV of his Complaint, pursuant to FRCP 12(f).

**MEMORANDUM OF LAW**

**I.    INTRODUCTION**

Plaintiff seeks to represent four classes, all of which are fatally flawed, and in a manner that discovery cannot repair.

First, Plaintiff seeks to represent a nationwide Do-Not-Call ("DNC") Registry class. The DNC Registry class is overly broad and lacks commonality because: i) it is not limited to class members who received more than one call violating the statute within a 12-month period; ii) it fails to exclude calls made with consent or to individuals with an established business relationship; and iii) it is not limited to individuals who personally placed their number on the DNC Registry. Moreover, Plaintiff does not meet the class definition because he does not allege

1

the use of his phone for residential purposes.

Second, Plaintiff seeks to represent a nationwide Abandoned Call class. The Abandoned Call class fails because there is no private right of action for violation of 47 C.F.R. § 64.1200(a)(7) and even if there was, Plaintiff fails to allege facts showing he is part of the class. Further, the class is overly broad because it includes individuals whose calls were not abandoned because loanDepot's agent was on the call at the time.

Third, Plaintiff seeks to represent a nationwide Prerecorded Message class. The Prerecorded Message class is not defined objectively because it includes only individuals who did not provide express written consent—which is a critical merits issue and not subject to objective determination.

Lastly, Plaintiff seeks to represent a Florida Solicitation class. Similar to the Prerecorded Messaged Class, the Florida Solicitation class is also not defined based on objective criteria, as it only encompasses individuals who have not given express written consent. Since the class definitions are fatally flawed for critical reasons that cannot be cured in discovery, they must be stricken here and now.

Moreover, Plaintiff's demand for attorney's fees in Count IV of his Complaint should be stricken for three reasons.

First, the Florida Solicitation Act, § 501.059 ("FTSA") is vague as to whether attorney's fees can be recovered on an FTSA claim related to prerecorded calls.

Second, Plaintiff fails to allege any contractual basis that would support such an award.

Lastly, the demand for attorney's fees should be stricken because even the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") does not authorize for the recovery of attorney's fees, further negating any basis for the award. As such, the Court should strike

Plaintiff's demand for attorney's fees in Count IV of his Complaint in accordance with Rule 12(f).

## II.   <u>THE ALLEGED FACTS</u>

Plaintiff alleges violations of the TCPA and the FTSA based on receipt of alleged phone calls to his cellular number without his consent and while his number was registered on the National DNC Registry. *Id*. ¶¶ 20-21. Based on these allegations, Plaintiff seeks to represent four separately defined classes:

(1) **<u>Do-Not-Call Registry Class</u>**: All individuals in the United States (1) to whom Defendant, or a third party acting on Defendant's behalf, placed, or caused to be placed, a phone call; (2) directed to a residential or cellular telephone number; (3) that is registered on the National Do-Not-Call Registry; (4) in which the purpose of the call was to market Defendant's mortgage loans; (5) within the four years preceding the date of the original complaint through the date of class certification.

(2) **<u>Abandoned Call Class</u>**: All individuals in the United States (1) whom answered a solicitation call from Defendant; (2) within the four years preceding the date of the original complaint through the date of class certification; (3) in which Defendant failed to provide a prerecorded identification and opt-out message and in automated, interactive voice and/or key press-activated opt-out mechanism that enables the individual to make a do-not-call request; (4) within two (2) seconds of the individual completing their greeting after answering Defendant's call(s).

(3) **<u>Prerecorded Message Class</u>**: All individuals in the United States (1) to whom Defendant, or a third party acting on its behalf, placed, or caused to be placed, a phone call; (2) to a phone number assigned to a cellular telephone service; (3) using an artificial or prerecorded voice; (4) without the prior express written consent of the individual; (5) within the four years preceding the date of this complaint through the date of class certification.

(4) **<u>Florida Solicitation Class:</u>** All individuals in the state of Florida (1) to whom Defendant, or a third party acting on its behalf, placed, or caused to be placed, a phone call; (2) to a phone number assigned to a cellular telephone service; (3) that played a recorded message  upon the individual answering Defendant's call; (4) without the prior express written consent of the individual; (5) within the two years preceding the date of this complain through the date of class certification.

*Id*. ¶ 38. On behalf of himself and the putative members of the Florida Solicitation class, Plaintiff requested, among others, an award of attorney's fees and costs. *Id.* ¶ 84.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading…any redundant, immaterial, impertinent, or scandalous matter." "Immaterial" matter has no important relation to the claim or defense, and "impertinent" matter does not relate to the issue in question. *S.D. v. St. Johns Cnty. Sch. Dist*., 2009 WL 1941482, at *1 (M.D. Fla. July 7, 2009). "A motion to strike is intended to clean up the pleadings, removing irrelevant or otherwise confusing materials." *Williams v. Delray Auto Mall, Inc*., 289 F.R.D. 697, 699 (S.D. Fla. 2013). Courts have broad discretion when considering a motion to strike. *Morrison v. Exec. Aircrafting Refinishing Inc.,* 434 F.Supp. 2d 1314, 1317-18 (S.D. Fla. 2005).

#### A.   Motion to Strike Class Allegations

"In the absence of a clear command from the Eleventh Circuit, many district courts have found it proper, when faced with a motion to strike class allegations, to view the Rule 23 factors through the lens of the Rule 12(f) standard for motions to strike and ask whether [the plaintiff's] class action allegations are redundant, immaterial, impertinent, or scandalous." *Cafe, Gelato & Panini LLC v. Simon Prop. Grp., Inc*., No. 20-60981-CIV, 2022 WL 17987098, at *3 (S.D. Fla. Mar. 22, 2022) (quoting *Gill-Samuel v. Nova Biomedical Corp*., 298 F.R.D. 693, 700 (S.D. Fla. 2014)). (internal quotations omitted).

A class action complaint must plead "the existence of a group of putative class members whose claims are susceptible of resolution on a classwide basis." *Manning v. Boston Med. Ctr. Corp.,* 725 F.3d 34, 59 (1st Cir. 2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). While in some instances discovery may be needed to aid in the determination of whether a class action is appropriate, "[s]ometimes the issues are plain enough from the pleadings" to determine that a case should not proceed as a class action. *Gen. Tel. Co. of Sw. v. Falcon*, 457

4

U.S. 147, 160 (1982); *see also MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*, 755 F. Supp. 2d 1205, 2017 (M.D. Fla. 2010) ("Where the propriety of a class action procedure is plain from the initial pleadings, a district court may rule on the issue prior to the filing of a motion for class certification.") (quoting *Stan Smith v. Network Sols., Inc. and Verisign, Inc.*, 135 F. Supp. 2d 1159 (N.D. Ala. 2001)).

"For a district court to certify a class action, the named plaintiff must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1265 (11th Cir. 2009) (internal quotations omitted).

**B.     Motion to Strike Attorney's Fees**

Under Florida law, "each party is responsible for its own attorney's fees unless a contract or statute provides otherwise...." *Price v. Tyler*, 890 So. 2d 246, 251 (Fla. 2004). In turn, "a court may grant a motion to strike a demand for attorney's fees, where the plaintiff fails to plead a contractual or statutory basis or none exists." *Gilbert v. State Farm Mut. Auto. Ins. Co.*, 95 F.Supp.3d 1358, 1365 (M.D. Fla. 2015) (citing *Italiano v. Jones Chems, Inc.*, 908 F.Supp. 904 (M.D. Fla. 1995)).

**IV.     <u>ARGUMENT</u>**

**A.     Plaintiff's Class Definitions Must Be Stricken Because They Are Facially Uncertifiable As A Matter Of Law.**

**1.     The DNC Registry Class is Overly Broad, Lacks Commonality, and Plaintiff Does Not Meet the Proposed Class Definition.**

**a.     The DNC Registry Class is Overly Broad.**

Courts regularly decline to certify overbroad classes. *See Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000) (affirming denial of class certification

because the proposed class was overly broad). And, where a "defined class is facially overbroad, it is appropriate to strike the class allegations at the pleadings stage." *Vann v. Dolly, Inc.*, 2020 WL 902831, at *5 (N.D. Ill. Feb. 25, 2020). Allowing an overbroad class to proceed past the pleadings stage creates an inherent unfairness to the defendant in view of the "in terrorem character of a class action." *Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 677-78 (7th Cir. 2009) ("[A] class should not be certified if it contains a great many of persons who have suffered no injury.").

Here, Plaintiff's proposed DNC Registry class is massively overbroad because: (i) it is not limited to class members who received more than one call violating the statute within a 12-month period; (ii) it does not account for consent or established business relationship defenses; and (iii) it is not limited to individuals who personally placed their number on the DNC Registry.

> **i.    The DNC Registry Class is Not Limited to Class Members who Received more than One Call Violating the Statute within a 12-month Period.**

47 U.S.C. § 227(c)(5) provides, "[a] person who has received ***more than one telephone call within any 12-month period*** by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, …bring in an appropriate court of that State—(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or (C) both such actions." (emphasis added). By its express terms, therefore, 47 U.S.C. § 227(c)(5) only provides a private right of action for a person who has received ***more than one telephone call*** in violation of the TCPA within a 12-month period. Yet, Plaintiff's DNC Registry Class is not limited as such.

Plaintiff's DNC Registry Class necessarily includes all individuals whom loanDepot

"placed, or caused to be placed, <u>a phone call</u>." Compl. ¶ 38. It does not limit the individuals to *more than one telephone call within a 12-month period* as the statute provides. Thus, the DNC Registry class, by definition, will include individuals whom loanDepot only placed one call to and therefore, do not have a valid claim. *See Katz v. CrossCountry Mortg., LLC,* No. 1:22-CV-00925, 2022 WL 16950481, at *6 (N.D. Ohio Nov. 15, 2022) (dismissing Plaintiff's First Amended Complaint where, among other things, "Plaintiff's FAC fail[ed] to allege that Defendant made more than one call to him within a 12-month time frame"). Accordingly, Plaintiff's DNC Registry class must be stricken as it is not limited to class members who received more than one call violating the TCPA within a 12-month period.

### ii.     The DNC Registry Class Fails to Exclude Calls Made with Consent and to Individuals with an Established Business Relationship.

The TCPA makes it unlawful for any person to "make any call (other than a call made for emergency purposes or made with ***prior express consent*** of the call party) using an automatic telephone dialing system or an artificial or prerecorded voice..." 47 U.S.C. § 227(b)(1)(A) (emphasis added).

Courts have properly rejected class definitions as impermissibly overbroad where the "proposed class could potentially include thousands of individuals who consented to receiving calls on their cellphones…" *Jamison v. First Credit Servs., Inc*., No. 12 C 4415, 2013 WL 3872171, at *8 (N.D. Ill. July 29, 2013); *see Hicks v. Client Servs., Inc*., No. 07-61822-CIV, 2008 WL 5479111, at *8 (S.D. Fla. Dec. 11, 2008) (denying class certification of the TCPA claim because the Court found "consent is an issue that would have to be determined on an individual basis at trial); *Balthazor v. Cent. Credit Servs., Inc*., No. 10-62435-CIV, 2012 WL 6725872, at *5 (S.D. Fla. Dec. 27, 2012) (same). This is because, under the TCPA, a call made with prior express

consent is lawful—i.e., a plaintiff suffers no harm—and the absence of consent is fatal to an individual's TCPA claim, and critical to a defendant's defense.

Additionally, the Federal Communications Commission's ("FCC") DNC regulations restrict "telephone solicitations" to numbers on the DNC registry. *See* 47 C.F.R. § 64.1200(c)(2). The FCC, however, defines, "telephone solicitation" to exclude a call or message to any person for whom the caller had express written consent or with whom the caller has an established business relationship ("EBR"). *Id*. § 64.1200(f)(14). Thus, absence of consent or an EBR is an affirmative allegation that must be included to state a claim for violation of the DNC rules.

Here, Plaintiff's DNC Registry class is impermissibly overbroad as the class definition includes everyone to whom "Defendant, or a third party acting on Defendant's behalf, placed, or caused to be placed, a phone call… (4) in which the purpose of the call was to market Defendant's mortgage loans…" Compl. ¶ 38. By definition, therefore, the putative class necessarily includes individuals who validly consented to receive calls from loanDepot, including, for example, every loanDepot customer, even if they had provided their phone number and consented to receive calls. As calls placed with the requisite consent are not actionable under the TCPA, the class therefore includes a great number of individuals who were not been harmed by loanDepot.

Moreover, Plaintiff's DNC Registry class would include members who lack valid claims because they have an established business relationship with loanDepot by completing a transaction within 18 months of receiving a call or text message. *See* Compl. ¶ 38. And there are no allegations from which the Court could plausibly discern a class which exclude such individuals. For example, nothing in the DNC Registry class definition or class allegations provide a mechanism to identify individuals who consented to calls or who made a purchase with loanDepot in the past 18 months so as to properly exclude them from the putative class. Accordingly, Plaintiff's DNC Registry

class must be stricken as it fails to exclude calls made with consent and to individuals with an established business relationship.

iii.      **The DNC Registry Class is Not Limited to Individuals who Personally Placed Their Number on the DNC Registry.**

47 C.F.R. § 64.1200(c), provides, in relevant part "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber ***who has registered his or her telephone number on the national do-not-call registry*** of persons who do not wish to receive telephone solicitations that is maintained by the federal government." (emphasis added). The plain language of Section 64.1200(c) indicates that Section 227(c)(5)'s private action exists only for a residential telephone subscriber who has registered his or her telephone number on the national DNC Registry.

Here, Plaintiff's DNC Registry class is overly broad because it is not limited to individuals who personally placed their number on the DNC Registry. The class, as defined in the Complaint, includes all individuals "to whom Defendant, or a third party acting on Defendant's behalf, placed, or caused to be placed, a phone call, ..., (3) that is registered on the National Do-Not-Call Registry…" Compl. ¶ 38. This definition encompasses all individuals whose number is registered on the DNC Registry, regardless of whether he or she personally registered it. However, those individuals who did not personally register their telephone number on the DNC Registry, lack a valid claim. *See Rombough v. Robert D. Smith Ins. Agency, Inc.,* No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *5 (N.D. Iowa June 9, 2022) (dismissing case with prejudice where Plaintiff failed to allege that she registered her telephone on the DNC registry).

Allowing this action to proceed with the proposed class definition as is, would therefore work an inherent unfairness against loanDepot, because it would be required to undertake the

burden and expense of defending against a putative class that contain members with no standing and no claim. Moreover, a class—like the one here—that necessarily includes individuals who lack standing, could never be certified, as every class member must be able to establish Article III standing in order for a putative class to proceed. *TransUnion* LLC, 141 S. Ct. at 2208.

### b.      The DNC Registry Class Lacks Commonality.

In analyzing the merits of a putative class, closely related to, but analytically distinct from the over-breadth inquiry, is the commonality analysis.

Rule 23(a)(2) mandates that there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires more, however, than merely raising common questions "but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation" is required. *Dukes*, 564 U.S. at 350 (emphasis in original). If "the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question" and commonality is absent. *Hansen v. United Airlines, Inc.*, No. 20 CV 2142, 2021 WL 4552552, at *5 (N.D. Ill. Oct. 5, 2021). Stated differently, the putative class's "claims must depend upon a common contention … that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

Here, because the DNC Registry class definition fails to account for class members that lack valid claims (i.e., pursuant to the existence of prior express consent, have an EBR with loanDepot, and did not personally place their number on the DNC Registry), there is no conceivable method to prove the validity of all class member claims' "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Some class members will lack a valid claim because they did not receive more than one call within a 12-month period, provided consent, had

an established business relationship with loanDepot, or did not personally place his or her phone number on the DNC Registry, and it would be impossible to determine through common evidence who has a valid claim amongst the entire class.

The DNC Registry class also does not account for the critical issue of consent at all. Thus, the available defenses facially and necessarily thwart class-wide "answers" on the critical issue of liability. Stated simply—there is no pertinent commonality amongst class members which would hold the class together. The class, therefore, facially lacks commonality, as answers to critical common issues cannot be determined "in one stroke." *Dukes*, 564 U.S. at 350; *see Hicks*, 2008 WL 5479111, at *8 (finding no commonality where the Court found "consent is an issue that would have to be determined on an individual basis at trial); *Balthazor*, 2012 WL 6725872, at *5 (same).

### c.   Plaintiff Does Not Meet the Definition of the DNC Registry Class.

To bring forth a class action suit, "[i]t is axiomatic that the lead plaintiff must fit the class definition." *See, e.g., Bailey v. Patterson*, 369 U.S. 31, 32–33, (1962) ("[A plaintiff] cannot represent a class of whom they are not a part."); *La Sala v. American Savings & Loan Assoc.*, 5 Cal.3d 864, 875 (1971) ("[A] plaintiff seeking to maintain a class action must be a member of the class he claims to represent"). Additionally, the Eleventh Circuit has held that there "cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class." *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir.2000).

Here, Plaintiff alleges that he is the "sole operator, possessor, and subscriber of the cellular telephone number ending in 6485." Compl. ¶ 15. And the number ending in 6485 was assigned to a cellular telephone service. *Id*. ¶ 16. Plaintiff does not allege, however, that his number was a residential number as required under 47 C.F.R. § 64.1200(c). But Plaintiff seeks

to represent a putative class in which calls were made to a residential telephone number. *Id.* ¶ 38.

Plaintiff's DNC Registry class definition has a fatal problem—Plaintiff is subject to a unique defense while the proposed class members are not. Plaintiff pleads no facts to suggest that his telephone number ending in 6485 was a residential number. Because Plaintiff failed to allege his telephone number was a residential number, he himself does not meet the DNC Registry class definition, and thus, the class cannot be certified. *See Mazur v. eBay Inc.*, 257 F.R.D. 563, 569 (N.D. Cal. 2009) (denying motion for class certification where plaintiff's claims were different from that of the proposed class).

> **2.    The Abandoned Call Class is Uncertifiable Because No Private Right of Action Exists, Plaintiff Does Not Meet the Proposed Class Definition, and it is Overly Broad.**
>
> **a.    There is No Private Right of Action to Enforce this Provision.**

Plaintiff seeks to represent an Abandoned Call class based on an alleged violation of 47 C.F.R. § 64.1200(a)(7)(i), which provides, in relevant part, "[w]henever a live sales representative is not available to speak with the person answering the call, within two (2) seconds after the called person's completed greeting, the telemarketer or the seller must provide: (A) A prerecorded identification and opt-out message…, and (B) An automated, interactive voice- and/or key press-activated opt-out mechanism that enables the called person to make a do-not-call request prior to terminating the call, including brief explanatory instructions on how to use such mechanism…"

However, 47 C.F.R. § 64.1200(a)(7)(i) is a regulatory provision that implements a subsection of the TCPA, which mandates that the FCC "prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone." 47 U.S.C. § 227(d)(3). But "[t]his [TCPA] subsection [§ 227(d)] does not create an

associated private right of action." *Barrett v. Vivint, Inc.*, No. 219CV00568DBBCMR, 2020 WL 2558231, at *6 (D. Utah May 20, 2020) (citing § 227(d)). Therefore, "[the] [t]echnical and procedural standards specific to automated calls [that] are included in § 227(d) and [its] accompanying regulation 47 C.F.R. § 64.1200[(a)(7)] ... do not provide a private right of action or a statutory-damages provision." *Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir. 2011). In other words, Plaintiff cannot file a lawsuit to enforce this provision. The FCC has the exclusive authority to enforce this regulation. *See e.g., Escano v. RCI LLC,* No. CV 22-360 DHU/GJF, 2022 WL 17251273, at *5 (D.N.M. Nov. 28, 2022), report and recommendation adopted, No. 222CV00360DHUGJF, 2023 WL 34525 (D.N.M. Jan. 4, 2023) ("dismissing with prejudice Counts Five and Six, which are founded on a provision of the Telephone Consumer Protection Act (TCPA) that provides no private right of action"). And because Plaintiff does not possess a private right of action to enforce 47 C.F.R. § 64.1200(a)(7)(i), the individuals in the Abandoned Call class will similarly lack such a right and, as a result, will lack a valid claim. *See Owens-Benniefield v. Nationstar Mortg. LLC*, 258 F. Supp. 3d 1300, 1318 (M.D. Fla. 2017) (dismissing claims with prejudice where no private right of action exists).

> **b.**   **Even if a Private Right of Action Did Exist—it Does Not— Plaintiff Does Not Meet the Class Definition.**

Even if a private right of action did exist, 47 U.S.C. § 227(c)(5) only provides a private right of action for a person who has received more than one telephone call in violation of the TCPA within a 12-month period.

Here, Plaintiff does not allege any facts demonstrating he received more than one "abandoned" call within any 12-month period. More specifically, Plaintiff alleged that "[u]pon answering some of Defendant's solicitation calls, Plaintiff was met with an extended period of dead air (approximately 15 seconds) and was not greeted by a prerecorded message or a live

representative despite saying 'hello' multiple times." *Id.* at ¶ 33. However, Plaintiff did not allege any facts demonstrating that he received more than one "abandoned" call within any 12-month period, as required by the statute.

Plaintiff's Abandoned Call class definition has a fatal problem—it addresses a different set of facts and injury, than that of the named Plaintiff. Plaintiff pleads no facts to suggest that he received more than one "abandoned" call in 12-month period. Because Plaintiff failed to allege that he received more than one such call in 12-month period, he himself does not meet the Abandoned Call class definition, and thus, the class cannot be certified.

### c. The Abandoned Call Class Fails to Exclude Calls that are Not Abandoned Because loanDepot's Agent Was On The Call.

47 C.F.R. § 64.1200(a)(7), provides, in relevant part, "[a] call is 'abandoned' if it is not connected to a live sales representative within two (2) seconds of the called person's completed greeting." Only when a call is "abandoned" must there be a prerecorded identification and opt-out message and an automated, interactive voice- and/or key press-activated opt-out mechanism that enables the called person to make a do-not-call request.  47 C.F.R. § 64.1200(a)(7)(i).

Here, the Abandoned Call class, as defined, includes all individuals to whom a message was not played within two (2) seconds of a called party completing their greeting. Compl. ¶ 38. This class, however, overlooks the very definition of "abandoned" call under 47 C.F.R. § 64.1200(a)(7). A call is "abandoned" where there is no live agent on the line. The Abandoned Call class is flawed because it does not exempt calls that are not considered "abandoned" due to the presence of a loanDepot representative on the call. Therefore, the proposed definition of the Abandoned Call class, as it currently stands, includes individuals who do not have a valid claim because such calls were not abandoned. This failure to exempt calls where a loanDepot representative was present may result in individuals who are not truly part of the class. As such,

the Abandoned Call class must be stricken.

>    **3.    The Prerecorded Message Class is Pleaded on a Merits Based Inquiry and Not Objective Criteria.**

A class must be defined based upon clear and objective criteria. *Alhassid v. Bank of Am., N.A.*, 307 F.R.D. 684, 693 (S.D. Fla. 2015). A class defined based upon the merits of a claim is simply not certifiable. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). This is so because merits determinations must not be made at the certification stage—yet a class defined based upon the merits of a claim assures that all members of a class have already won on a critical substantive issue. *MSP Recovery Claims v. Plymouth Rock Assur. Corp., Inc.*, 404 F. Supp. 3d 470, 485 (D. Mass. 2019); *see also Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016) (explaining that a "district court can consider the merits "only" to the extent "they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.") And that, in turns, creates problems of fairness for defendants and violates the protections of the one-way intervention rule.[1]

Here, Plaintiff's Prerecorded Message class violates all of these rules and raises all attendant concerns. The class turns on whether a consumer received an artificial or prerecorded voice call from loanDepot without his or her prior express written consent. Compl. ¶ 38.

Yet, to determine who is in the class here, the court would first need to review the content of the message for each call sent to class members to assess whether it is an artificial or prerecorded voice as defined under the TCPA. This is obviously problematic from a predominance perspective—individualized review will be needed since the class is not limited to any specific message but applies to all messages—but it is also plainly a merits determination.

---

[1] "One-way intervention occurs when the potential members of a class action are allowed to await ... final judgment on the merits in order to determine whether participation [in the class] would be favorable to their interests." *Am. Pipe & Constr. Co. v. State of Utah*, 414 U.S. 538, 547 (1974) (internal quotation marks omitted).

That is, at the class certification stage this court will need to decide whether or not a class member received an artificial or prerecorded voice without prior express written consent. And that is per se improper. *See Vandenbrink v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 3156596, at *3 (M.D. Fla. Aug. 3, 2012) (striking class allegations where critical issues to be resolved "will be individual in nature"); *Barnes v. Allsup Employment Services, LLC*, 21-CV-21121, 2022 WL 2390715, at *5 (S.D. Fla. July 1, 2022) (striking plaintiff's class where an individualized inquiry would need to be undertaken in determining which potential class members received more than one phone call, and in turn whether the respective calls each received was subject to liability).

Because membership in the class is determined by whether the consumer received an artificial or prerecorded call without consent, loanDepot would be unfairly prejudiced by a proceeding where a crucial merits inquiry has already been determined in the class members' favor—individuals are either already determined to have won on this critical issue, or they are not members of the class at all. *See Alhassid* at 694 (S.D. Fla. 2015) (striking all nine of plaintiff's class definitions as impermissible "fail-safe" classes which would require the court to determine that the defendant is liable before it could conclude that the individual is a member of the class).

As Plaintiff's Prerecorded Message class could never be certified, this Court should follow the numerous courts across the country who have stricken such classes as improper fail-safes. *See Genenbacher v. CenturyTel Fiber Co. II*, 244 F.R.D. 485, 488 (C.D. Ill. 2007) (finding it impermissible to define a class in such a way that "the class members either win or are not in the class" so that "the Court cannot enter an adverse judgment against the class."); *Lindsay Transmission, LLC v. Office Depot, Inc.*, 4:12-CV-221 CEJ, 2013 WL 275568, at *4 (E.D. Mo. Jan. 24, 2013) ("the proposed class consist[ed] solely of persons who can establish that defendant violated the TCPA," and consequently, was an impermissible fail-safe class.)

### 4.    The Florida Solicitation Class is Also Pleaded on a Merits Based Inquiry and Not Objective Criteria.

For the same reasons as Section 4(C) above, the Florida Solicitation class is uncertifiable because it is also pleaded on a merits based inquiry and not objective criteria. The class turns on whether a consumer received an artificial or prerecorded voice call from loanDepot without his or her prior express written consent. Compl. ¶ 38. Because the Florida Solicitation class definition "employs conclusory language identifying class membership in terms of the ultimate merits question of the defendant's liability" the class can never be certified. *See Alhassid*, 307 F.R.D. at 693; *Hurt v. Shelby Cnty. Bd. of Educ.*, No. 2:13-CV-230-VEH, 2014 WL 4269113, at *9 (N.D. Ala. Aug. 21, 2014) (denying motion for class certification where Plaintiff's class definition was an improper "fail-safe").

### B.    Plaintiff's Request For Attorney's Fees Must Be Stricken Because The Statue is Vague and There Is No Basis In Contract To Support The Award.

"Under the 'American Rule,' the default assumption [was] that each party [was] responsible for its own legal fees, and thus fees ordinarily will not be awarded to the prevailing party without express statutory authority." *Johnson v. Florida*, 348 F.3d 1334, 1350 (11th Cir.2003). Now, "[f]ederal courts have consistently followed the general rule 'that absent [a] statute or enforceable contract, litigants pay their own attorneys' fees.'" *Blake Tishman, P.A*, 2018 WL 11252894, at *7 (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257 (1975); *see Italiano*, 908 F. Supp. at 907 ("In general, the recovery of attorney's fees as damages or costs by the prevailing party to an action is allowed only when provided for by statute or contract").

Courts within this Circuit have consistently stricken a plaintiff's demand for attorney's fees where he or she has failed to establish a basis in statute or in contract to support the award. *See*

*Ninghai Genius Child Prod. Co. v. Kool Pak, Inc.*, No. 11-61205-CIV, 2012 WL 1203821, at *3 (S.D. Fla. Apr. 11, 2012) (granting motion to strike attorneys' fees where "Plaintiff failed to allege any statutory or contractual basis that would support such an award"); *Euro RSCG Direct Response, LLC v. Green Bullion Fin. Servs.*, 872 F. Supp. 2d 1353, 1364 (S.D. Fla. 2012) (citing *Ninghai Genius Child Prod. Co. Ltd. v. Kool Pak, Inc.*, No. 11-61205-CIV, 2012 WL 1203821, at *3 (S.D. Fla. Apr. 11, 2012)) (striking the plaintiff's demand for attorney fees because the plaintiff "failed to articulate a statutory or contractual basis for attorney's fees").

> **1.    The FTSA is Vague as to Whether Attorney's Fees Can Be Recovered on an FTSA Claim Related to Prerecorded Calls.**

The attorney's fees provision is found at Fla. Stat. § 501.059(11)(a). Fla. Stat. § 501.059(11)(a) provides "[i]n any civil litigation resulting from a transaction involving a violation of this section, the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, shall receive his or her reasonable attorney's fees and costs from the nonprevailing party" (emphasis added).

Here, the FTSA provides for the recovery of statutory damages for violations of its provisions. *See* Fla. Stat. § 501.059(10)(a). But the FTSA is vague as to whether attorney's fees can be recovered on an FTSA claim related to prerecorded calls. The provision providing for recovery of attorney's fees, Fla. Stat. § 501.059(11)(a), only applies to "any civil litigation resulting from a transaction involving a violation of this section," without specifying whether that includes violations related to prerecorded calls. As a result, there is ambiguity as to whether a plaintiff who prevails on an FTSA claim related to prerecorded calls is entitled to recover attorney's fees.

Given the ambiguous language of the attorney's fees provision of the FTSA, this Court should find that the statute does not authorize the recovery of attorney's fees in this case and should strike Plaintiff's demand for attorney's fees in Count IV of his Complaint. *See Blake Tishman, P.A,*

2018 WL 11252894, at *8.

**2.    There is No Contractual Basis to Support an Award of Attorney's Fees.**

As explained above, attorney's fees may also be recoverable if there is a contractual basis to support such an award. *Italiano*, 908 F. Supp. at 907. Here, Plaintiff fails to provide any contractual basis to support an award of attorney's fees. Plaintiff has not identified any specific contract of agreement that would authorize the recovery of attorney's fees, nor has Plaintiff provided any evidence that such a contract exists. The lack of any contractual basis for the award of attorney's fees is another reason that renders Plaintiff's request for such fees unjustified and unsupported. Therefore, this Court should strike Plaintiff's demand for attorney's fees in Count IV of his Complaint. *See Euro RSCG Direct Response, LLC*, 872 F. Supp. 2d at 1364; *Italiano*, 908 F. Supp. at 907 (striking Plaintiffs' request for attorney's fees where Plaintiffs failed to identify an applicable statute or contract that would authorize such an award).

**3.    Even the TCPA Does Not Authorize the Recovery of Attorney's Fees.**

The FTSA operates as a mini-TCPA for the state of Florida. Under the TCPA, an individual may "recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater" and "if the court finds that the defendant willfully or knowingly violated [the TCPA], the court may, in its discretion, [award treble damages]." 47 U.S.C. § (b)(3)(A)-(c).

However, Courts within this Circuit have universally held that "[p]laintiffs are **not** entitled to recover attorney's fees under the TCPA." *Blake Tishman, P.A. v. Baptist Health S. Fla. Inc*., No. 17-62230-CIV, 2018 WL 11252894, at *7 (S.D. Fla. Sept. 13, 2018), on reconsideration, 2019 WL 3890774 (S.D. Fla. Feb. 11, 2019) (emphasis added); *See Arnold v. Source Sols. Mgmt., LLC*, No. 8:20-CV-2519-SCB-SPF, 2021 WL 2515204, at *6 (M.D. Fla. Apr. 27, 2021) ("Plaintiff may

19

not recover attorney's fees pursuant to the TCPA inasmuch as the TCPA does not contain a fee-shifting provision"); *Rahn v. Bank of Am., N.A.*, No. 1:15-CV-4485-ODE-JSA, 2016 WL 7335392, at *5 (N.D. Ga. Sept. 2, 2016) ("the TCPA does not provide an award for attorney's fees"); *Reid v. I.C. Sys. Inc.*, 304 F.R.D. 253, 256 (D. Ariz. 2014) ("the TCPA does not provide for awards of attorneys' fees. Therefore, Defendant is not entitled to an award of attorneys' fees").

Indeed, "[t]he TCPA explicitly authorizes private parties to sue for violations and provides $500 in statutory damages for each violation, which functions as a bounty to incentivize private enforcement actions, although it does not provide for an award of attorneys' fees." *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, 2014 WL 7366255, at *3 (S.D. Fla. 2014).

The absence of authority for the recovery of attorney's fees under the TCPA, a federal statute, is persuasive evidence that the FTSA, which operates as a corollary statute to the TCPA, should not authorize such recovery either. The FTSA is the state counterpart to the TCPA, and the two statutes are closely aligned in terms of their provisions and purpose. If the TCPA, which is a widely recognized statute, does not provide for the recovery of attorney's fees, the FTSA should also not authorize such recovery. This is especially true in light of the fact that the FTSA does not contain any language explicitly providing for the recovery of attorney's fees. Therefore, this Court should strike Plaintiff's demand for attorney's fees in Count IV of his Complaint.

## V.   __CONCLUSION__

For the foregoing reasons, loanDepot respectfully requests that the Court strike Plaintiff's class allegations and demand for attorney's fees in Count IV of his Complaint.

## CERTIFICATE OF COMPLIANCE
### WITH S.D. FLA. L.R. 7.1(A)(3)

Pursuant to S.D. Fla. L.R. 7.1(a)(3), undersigned counsel for loanDepot certifies that he conferred with counsel for Plaintiff prior to filing this motion in an attempt to resolve the issues raised herein. The conferral was conducted by telephone on February 16, 2023. Plaintiff's counsel indicated that the Plaintiff is opposed to issuance of the requested relief.

Dated: March 10, 2023

By: */s/ Jenniffer Cabrera*

Jenniffer Cabrera (FBN 1034545)
**TROUTMAN FIRM**
1825 NW Corporate Blvd, Ste. 100
Boca Raton, Florida 33431
Telephone:  561-834-0883
jenniffer@troutmanfirm.com

*Counsel for Defendant loanDepot.com, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2023, a copy of the foregoing was served by ECF to counsel of record.

*/s/ Jenniffer Cabrera*
Jenniffer Cabrera